# Exhibit 7

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ESTATE OF EITAM HENKIN, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) Civil Action No. 1:19-cv-01184-RCL |
| | ) |
| THE ISLAMIC REPUBLIC OF IRAN, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**Declaration of Prof. Israel Gilead**

I, Prof. Israel Gilead, declare pursuant to 28 U.S.C. § 1746 as follows:

## I.    Qualifications

1.    A copy of my current CV is attached as Exhibit A.

2.    Position: I am currently Emeritus Professor of Law, Hebrew University of Jerusalem (formerly Dean) and Professor of Law, The Academic Center of Law and Sciences (Head of Master Programs).

3.    Teaching: I have been teaching tort law and other fields of law in various academic institutions in Israel and abroad for 35 years.

4.    Publications: I have written books, articles, chapters in books, regarding tort law, law and economics, limitation of civil actions, and corporate law, some of which are listed in my attached CV.

5.    Affiliations: I am a member of the European Group on Tort Law, the European Centre of Tort and Insurance Law, the American Law Institute, and Israel's Codification

Committees.  I am also a member of Israel's Council of Higher Education, serving as Head of the Committee on Law and Social Sciences.

6.      Impact: I have been referred to or cited by, and often followed by, more than 1,000 Israeli cases in the area of tort law – including by the Israeli Supreme Court.  I have also drafted law amendments for the Ministry of Justice.

7.      Speaking: I have given numerous lectures to judges, state attorneys, lawyers and various professional groups.

8.      Degrees: LL.B., LL.D, and B.A. (Economics) all from the Hebrew University of Jerusalem.

9.      I have served as an expert witness or consultant on Israeli law for litigation in the United States, the United Kingdom, and in Australia.  For example, I provided, an expert opinion to an Australian court regarding the liability of an Israeli-owned bank for aiding and abetting torts committed by the officers and directors of a corporation and served as a consulting expert to plaintiffs in a U.S. court regarding the application of Israeli law for harm caused to an Israeli citizen in the crash of a Boeing plane in Ethiopia.

## II.     Nature and Scope of this Declaration

10.     Counsel for the Plaintiffs in this case has asked me to provide an opinion regarding whether the Defendants would be liable under Israeli law for the terrorist attack against the Henkins ("the Attack") described in the Plaintiffs' Complaint at paragraphs 1-8 and 79-107. Specifically, I have been asked whether Eitam Henkin, Naama Henkin, and the four Henkin children would each have causes of action under Israeli law against each of the Defendants: Syria,

Iran, the Islamic Revolutionary Guard Corps, the Iranian Ministry of Intelligence and Security, Bank Markazi, Bank Melli, and Bank Saderat.

11.     For my opinion, I have assumed that the allegations of the Complaint are true.  I have also assumed that the conclusions of declarations by Arieh Sptizen, Patrick Clawson, and Matthew Levitt are correct, namely that Hamas committed the Attack and that each of the Defendants provided various types of material support to Hamas, including training, safe haven, weaponry, financing, as well as ideological support, in a manner that enabled Hamas to commit the Attack.  Notably, I have assumed that to the extent that the Islamic Revolutionary Guard Corps, the Iranian Ministry of Intelligence and Security, Bank Markazi, Bank Melli, and Bank Saderat, were formally, at the relevant times, separate legal entities, they nevertheless acted as agents, as an apparatus, of the Iranian government, being fully aware of the tortious nature of the facts described above and knowingly contributing to it, namely, that in this regard the veil of incorporation should be lifted (or pierced) and all should be identified with the Iranian government.

12.     My opinion is based on my years of experience, study, and scholarship as a law professor in Israel and the legal authorities cited in this declaration.

13.     I am being compensated $10,000 for this declaration and the preparatory work, regardless of the outcome of the litigation or of the content of my opinion.  I have no prior or current professional or personal connection with any of the parties in this case that might preclude my ability to provide impartial testimony.

### III.     Summary of my Opinions

14.     In my professional opinion, to a reasonable degree of certainty, if this case were before an Israeli court and evaluated under Israeli law, all of the Defendants would be liable to each of the Plaintiffs under applicable Israeli law, based on the following principles:

- Personal liability under Article 12 of the Civil Wrong Ordinance ("CWO") as "secondary partners" for aiding and abetting the torts committed by the direct perpetrators.

- Personal and primary liability for supporting terrorists acts in accordance with the reasoning of the **Mantin v. PLO** case, discussed further below.

- Vicarious liability as principal for the torts committed by the direct perpetrators as agents, under Article 14 of the CWO.

15.     Under these legal principles, all of the Defendants would likely be found liable in the following manner:

- **Secondarily liable** for aiding and abetting the torts of assault and negligence (against all Plaintiffs) and battery (also called "assault" in Israel) against Eitam and Naama Henkin committed by Hamas.

- **Directly liable** to all Plaintiffs in negligence for supporting terrorist acts.

- **Vicariously liable** for the torts of assault and negligence (against all Plaintiffs) and battery (also called "assault" in Israel) against Eitam and Naama Henkin committed by Hamas.

4

16.     On each of the above grounds, liability, if imposed, would be imposed on the Defendants for the *entire loss* caused by the Attack because their liability would be considered "joint and several" under Articles 11 and/or 84 of the CWO.

17.     Under Israeli law, the types of damages available to Naama Henkin and the Henkin children include:

- Pecuniary damages to Naama Henkin and the Henkin children for the loss of Eitam Henkin's financial support (dependents' claim).

- Non-pecuniary harm to Naama Henkin and the Henkin children presuming they suffered severe mental harm as witnesses to and as a result of the Attack (indirect, secondary, victims).

- According to a recent District Court decision, bereavement damages, akin to solatium damages under U.S. law, to Naama Henkin and the Henkin children for the loss of Eitam Henkin.

- Punitive damages for the immoral and outrageous terrorist act.

## IV.     Background—Battery, Assault, and Negligence

### A.     Origins of Israeli tort law:

18.     Israeli tort law originates in the English law of torts.  Most of it is still contained in and is governed by the Civil Wrong Ordinance which was enacted in the 1940s under the authority of the British Mandate.  As such, the CWO primarily reflects English tort law of the 1940s with a few adjustments.  In the almost 75 years since its inception, the CWO has been amended and supplemented by important Israeli legislation.  Yet, at its core, the CWO follows the British common law.

**B.  Battery**

19.     Article 23 of the CWO provides that "Assault consists of intentionally applying force of any kind, whether by way of striking, touching, moving or otherwise, to the person of another, either directly or indirectly, without his consent, or with his consent if the consent is obtained by fraud....".  This definition of assault corresponds with the tort of battery in common law.

20.     Eitam and Naama Henkin, who were both shot and killed by Hamas, obviously qualify as victims of intentional and vicious use of force by the Hamas attackers.

**C.  Assault**

21.     Also under Article 23, an assault is defined as an attempt or a threat by any act or gesture to use such force against the person of another, if the other reasonably believes that the assailant has the intention and the ability to carry out his scheme.

22.     All of the Plaintiffs, including the Henkin children, are victims of an assault as the Hamas attackers shot at them and threatened violence – in addition to committing physical violence against Eitam and Naama.

**D.  Negligence**

23.     <u>Elements of Negligence</u>: The tort of Negligence is embodied in Articles 35 – 36 of the CWO.  It is composed of three elements:

- The first element is **"carelessness"** or **"negligent conduct"**.  This element is defined as failure to act as would a "reasonable, prudent person" in the circumstances.

- The second element is "**duty of care**", namely duty not to be careless/to act negligently.

- The third required, cumulative, element is "**harm**" which is **"causally linked"** to the carelessness, linked both in factual terms (cause-in-fact) and in legal terms (legal causation or "proximate cause" in US vocabulary).

24.    Like other common law jurisdictions, their interrelation (whether and where overlapping), and the role of the "reasonable foreseeability" requirement in each, has been debated in Israel since the enactment of the CWO.[1]  Despite the various scholarly debates, there is a consensus in the Israeli Supreme Court about the following basic statements:

- A **"duty"** is recognized by the court where it finds that the *positive* outcomes of imposing liability for the harm caused by the unreasonable conduct exceed its *negative* outcomes.  Positive outcomes include the promotion of fairness and justice, compensation to victims, and the need to deter potential wrongdoer. Reasons courts may deny the existence of a duty, include: concerns of over-deterrence, excessive litigation, or interference in other areas of law (i.e., the law of contracts or administrative law).

- The terms **"carelessness"** or "**negligent conduct**" means unreasonably risky conduct; one that a reasonable person would avoid, given its reasonably foreseeable outcomes, or given its morally inappropriate nature.

---

[1] I have written extensively on these topics since 1980s, in Hebrew and in English, including in the following two recent articles: Gilead,  *Simplifying Complexities if Negligence Law – A Joint Academic/Judicial Proposal* 10 **Journal of European Tort Law** 207-256 (2019); Gilead, *Models of Negligence – The Debate in Israel's Supreme Court,* 8 **Journal of European Tort Law** 1 -40 (2017).

- **"Harm"** is "**causally linked**" to the "negligent conduct" where:  a) the latter is a *causa sine qua non* of the former (the "but-for" test) and b) the specific harm caused ex post was foreseeable ex ante, when the negligent conduct occurred.  (This is legal causation, also known in common law as proximate cause.)

25.     <u>Negligence includes intentional wrongdoing</u>:  Under Israeli tort law of negligence, liability can also be imposed for harm caused knowingly, *intentionally*, and maliciously.  This means that in Israel the "intentional torts" overlap with the tort of Negligence.  The reason is simple: reasonable persons do not cause unreasonable harm knowingly, *intentionally*, and maliciously, and when they do, courts recognize a "duty" not to do so.

26.     Although negligence overlaps with intentional torts such as battery and assault, discussed above, intentional torts are still viable independent causes of action under Israeli law.

## V.     The Defendants' Personal Liability as "Secondary" Partners of the Direct Perpetrators

### A.     Introduction: the Distinction between Liability as a "Primary" Partner and as a "Secondary" Partner.

27.     Israeli law distinguishes between two degrees of involvement of a Defendant (D), like the Defendants here, in the commission of a tort by a tortfeasor (T), like the Hamas attackers here, against the plaintiff (P), here the members of the Henkin family.

28.     Where D is deeply and directly involved in the commission of T's tort that harmed P, such that D has "control over the commission of the offense and is part of a common design," D is perceived by the law as committing the *entire* tort, like T, even though some of the

elements of liability, such as the actual infliction of harm, are established only with regard to T.[2]

Accordingly, D is held fully liable to P as a "joint tortfeasor" for being a "primary" partner to the

tort committed by T.  No special statutory provisions are required to render D liable in cases of

"primary partnership".

29.     In contrast, where D's involvement in the commission of the tort by T is *indirect*

and *partial*, namely, where substantial elements of liability cannot be established with regard

to the tort, D cannot be characterized as "primary partner" but only, at most, as "secondary

partner" or "secondary tortfeasor".  The rule for secondary liability is found under CWO Article

12.  Under this rule, the D (here the Defendants) can be held fully liable for the tort committed

by T (Hamas) because it was an "intermediate factor" in the commission of the tort.[3]

30.     The above distinction in tort law between a primary partner and secondary

partner corresponds with a similar distinction in criminal law where the Penal Code

---

[2] See Civil Appeal (CivA)  269/82 **Hilman v. Carmi** Piskey Din (P.D.) 41 (iv) 1 (1987)), where two youngsters played with a gun and one of them mistakenly shot a passer-by.  The other youngster who did not shoot was held liable as "primary partner", and the court emphasized that as such liability exists regardless of Article 12 which applies to "secondary" partners.  See also CivA 3776/12 **Ha`efrati v. Jacont** (15/7/2012), where the husband of a wife, who used his invasive computer programing against a third party without his permission, was nevertheless held liable as a "primary" partner and not as "secondary" partner, so that there was no need to rely on Article 12.

[3] See CivA 1636/98 **Rav Bariach v. Chavshus** 55 (v) (P.D.) 337, 352-353 (2001), where it was noted that the references in Article 12 to commending, aiding, counseling, procuring, and ratifying apply to lower degrees of involvement which corresponds with the notion of "secondary partner".  *See also* **Hilman v. Carmi** where it was held that, where a person (D) "joins" a commission of a tort (by T) as a primary partner, there is no need to rely on Article 12 in order to render D jointly and severally liable with T.  The reason, as explained, is that a primary partner is fully liable for the tort because she committed that tort together with T. The conclusion, then, is that the major role of Article 12 is to establish and define the scope of liability of D as "secondary partner", liability which can be established only by a special provision such as Article 12.

differentiates between a person who participates in the commission of the offense on the one hand (primary partner) (Penal Code, Article 29 (1977)), and a person who either procures the commission of an offense[4] (Penal Code, Article 30 (1977)) or assists in its performance[5] (Article 31) (secondary partner). As the Supreme Court explained in **Chyro v. State of Israel**[6], a primary partner is a person who has control over the commission of the offence and is a part of its common design, while a secondary partner is a person who affects the commission of the offense from the outside and indirectly, without having any control over it.

### B. Defendants as "Secondary" Partners

31. Because Defendants did not have control over the commission of the Attack and did not plan the Attack, an Israeli court is unlikely to find that they were "primary" partners to the Battery, Assault, and Negligence committed by Hamas against the Plaintiffs. But Israeli courts would likely find Defendants liable as "secondary" partners to these torts under CWO - Article 12.

32. Article 12 of the CWO provides that:

> Any person who joins or aids in, authorizes, counsels, commends, procures or ratify any act done or to be done, or any omission made or to be made, by any other person shall be liable for such act or omission.

---

[4] By way of persuasion, encouragement, commanding, begging or any other way of exerting pressure.

[5] By enabling of facilitating its commission or otherwise contributing to the conditions for its commission.

[6] Criminal Appeal (CrA) 2111/99, 58(i) P.D. 411. 425-426.

33.     The Supreme Court of Israel in **Shoken**,[7] made it clear that liability under Article 12 for providing aid or contributing to T's tort is indirect and derivative and should be distinguished from the liability of the "primary" partner who commits the tort with T and who meets all the conditions for liability.

34.     It should be stressed that liability of the secondary partner under Article 12 is **full liability for the tort committed** by T and the harm caused.  T and D are liable "jointly and severely" to P.  In this regard, there is no difference between the liability of the "primary partner" and "secondary partner".  Each is liable jointly and severally with T.

C.     **An Overview: Elements required to establish the cause of liability under Article 12.**

35.     The elements required to establish secondary liability under Article 12 were summarized and further clarified in **Shoken**.[8]  These elements are:

(i)   There must be primary and direct liability of a person (T) who committed a tort vis a vis P.  Without such primary liability of T to P no secondary liability can be imposed on D as an 'intermediate'.[9]

(ii)  D, as an alleged "intermediate" who incurs secondary liability, must have "**actual knowledge**" that her conduct assists T in her direct (primary) liability for the tort committed vis a vis P.[10]  As discussed further below, "actual knowledge" as used in Israeli tort law does not require that the D have knowledge that the T intends to commit a *particular* act, merely that D has knowledge of the general nature of what acts T might commit.

---

[7] CivA 5977/07 **The Hebrew University of Jerusalem v. Shoken Publishing House**  (The **Shoken** case) (20.6.2011), paras. 21-22.

[8] *Supra* note 7.

[9] Ibid, para. 24 (Justice Rivlin).

[10] Ibid, para. 25.

(iii) The contribution of D, as an "intermediate"/secondary partner, to the T's tort, must be *material and significant*.[11]

In my opinion, to a reasonable degree of certainty, the Defendants' conduct in this case meets all three requirements.

### (i)      *Liability of the primary tortfeasors*

36.      As discussed above, the Ts in this case (the Hamas terrorists) are clearly liable to all Plaintiffs, the Henkin family, for the torts of Assault and Negligence and, in addition, are liable to the Estates of Eitam and Naama Henkin for the tort of Battery.  So, the first requirement for secondary liability has been clearly established.

### (ii)      *Actual knowledge*

37.      As stated above, "actual knowledge" in the context of Article 12 does not require that Defendants actually knew that Hamas was going to commit this particular attack against the Henkins.  Instead, Defendants merely needed to materially contribute to the effort and have the general perception of what foreseeably could arise from that material contribution. The history of the development of the "actual knowledge" doctrine highlights why knowledge of the specific attack is not required to find Defendants liable as secondary partners.

38.      In the past, the authorities regarding the mental element required for the imposition of secondary liability under Article 12, were split.[12]  According to one school of thought, only if D was actually aware that he is involved in the commission or a possible commission of a tort could D  be held liable.[13]  (One exception to this is the "ratification" after

---

[11] Ibid, para 26.

[12]  See, I. Gilead, **Tort Law – Israel**, Int. Ency. Laws 171 (Kluwer, 2003).

[13] **Buskila v. State of Israel** (CivA 337/81, 38(iii)P.D. 337, 348 (1984); **Hilman v. Carmi** (CivA 269/82, 41(iv)P.D. 1, 6 (1987); CivA 244/61 **Spormas v. Halber** 16 P.D. 1480, 1482-3 (1962); CivA

the fact of a tort that was previously committed.[14])  Moreover, in the legal literature it was suggested that P has to establish not only that D acted *knowingly*, but also that D acted *intentionally*, namely with the intention to tortiously inflict harm upon P.[15]

39.     This view was not a consensus.  A different school of thought asserted that D may be held liable under Article 12 even though D was unaware of his or her involvement in the commission of a specific tort.[16]  It was sufficient to find secondary liability if D provided material support for T's commission of the tort against P and that the tortious harm was reasonably foreseeable.

40.     Importantly, the Israeli Supreme Court has confirmed that a D can be held liable even if D does not have knowledge of the specific tort that T commits.  For example, **Shoken**[17] stated that, to hold D liable, there is no need to establish that D had actual knowledge of every detail of T's tortious conduct.  D need only be aware that it assists T's tortious conduct and that the tort committed against P is a foreseeable result of T's tortious conduct.  In the **Shoken** case, for example, where D assisted T in infringing on copyrights of others, D had "actual knowledge" of T's tort,  although being unaware of the specific copyright that was infringed.

---

533/66 **Sulima v. Yafora** 21(i) P.D. 515, 522 (1967); CivA 407/89 **Tzuk-Or v. Car Security** 48(v) P.D. 661, 703 (1994).

[14]  **Spormas**, ibid,  1482.

[15] A. Barak, M. Cheshin & I. Englard, **The Law of Civil Wrongs** 438 - 441 (G. Tedeschi ed., 2nd edn., 1976) 439

[16] See CivA 203/67 **Vitkovski v. Ben – Ya'akov** 21(ii) P.D. 260, 262 (1967); Civ A 308/59 **Shimkin v. Romano**, 14 P.D  2396, 2400-2 (1960);   CivA 131/55 **Friedman & Sons v. Levi** 11 P.D. 145, 149 (1957);  CivA 558/84 **Carmeli v. State of Israel** 41(iii) P.D. 757, 780 (1987); M. Landoy, Vicarious Liability in Tort Law, 21 **Hapraklit** 536, 537 (1965).

[17] Supra note 7, at para. 25 (Justice Rivlin).

41.     It should be stressed, in line with the above, that Israeli tort law **in general** does not require D to foresee the specific harm and the manner of its occurrence, here the October 2015 Attack, that T causes and to which D contributes.  It has been held, as under English law, that D "does not have to foresee the details of the occurrence. D's foresight does not have to be accurate and sharp. It is sufficient to be able to foresee the occurrence in general lines…in a glass darkly".[18]

42.     That said, D's knowledge that it is contributing to tortious conduct must be subjectively held.  **Shoken** makes clear that D must know that it is engaging in activity which contributes to the commission of a tort by others (Ts); constructive knowledge is not sufficient. This underscores the Supreme Court's holding in **Rinat v. Rom** (2002)[19] that D must have a subjective awareness that its involvement may contribute to the commission of a tort by T.

43.     In the instant case, Defendants have knowingly and intentionally encouraged and contributed to the tortious conduct by Hamas, subjectively foreseeing and materially contributing to the kinds of attacks against victims like the Henkin family.  As a result, an Israeli Court would likely hold that Defendants possessed "actual knowledge" of the Attack.

### (iii)     *Material and significant contribution*

44.     Another pre-condition to secondary liability under Article 12, as mentioned, is that D's contribution to the T's breach of duty has to be "material and significant".

---

[18] CivA 576/81 **Ben-Simon v' Barda**, 38 P.D (iii) 1, 8 (1984).

[19]  CivA 6871/99, 56(iv)P.D. 72, 84-85 (2002).

45.     In **Shoken**, the Israeli Supreme Court laid down guidelines regarding the materiality of the contribution.[20]  The court should examine, *inter alia*, the degree of D's involvement in T's tort and its contribution to and encouragement of the tort and the ability of D to prevent the commission of the tort by taking reasonable steps.

46.     <u>Shoken</u> stated that P does *not* have to establish **factual causation** between D's material and significant contribution to T's tort and the commission of the tort by T.[21] This means that D may be held liable under Article 12 although D's material and significant contribution to T's tort was *not* the *causa sine qua non* (the but-for cause) of T's tort.

47.     To be more specific, the Defendants (Ds) may be held liable under Article 12 for the terrorists' (Ts') torts even if the Plaintiffs establish that the Attack would have been committed without the Defendants' material and significant contribution.  It is sufficient, the Supreme Court stated, that the Ds took an *integral and significant part in the chain of events* that led to T's tort vis a vis P.[22]

48.     Here, the facts clearly support the finding that the Defendants were a significant part of the chain of events leading to the Attack by providing material contribution to Hamas in the form of money, weapons, training, safe haven, and other assistance.

### (iv)    Conclusion

49.     Based on the facts pleaded in the Complaint and the opinions of the Spitzen, Clawson, and Levitt declarations, assuming they are established to the satisfaction of the

---

[20]  Supra note 7, para. 26.

[21] Supra note 7, para. 26.

[22] See the **Mantin** case, infra note 25.

relevant factfinder, an Israeli court would likely find that all the required elements for imposing

personal secondary liability under Article 12 exists in this case.  The primary tortfeasors, the

Hamas attackers committed the Attack.  Through contributions to Hamas in the years leading

up to the Attack, the Defendants knowingly played a major role in Hamas's tortious conduct

understanding and being fully aware that their involvement, support, encouragement was likely

to result in deliberate tortious conduct, like the Attack carried out in this case.  And, the

Defendants' contributions to Hamas in the years leading up to the Attack were material and

significant.

50.      This conclusion is further supported by the decision in **Weiner v Moyal**.[23]  In that

case the primary wrongdoer (T) committed fraud against third parties (Ps).  T's daughter (D)

was held liable under Article 12 as a secondary wrongdoer, just because she knew of her

father's fraud, keeping it a secret, and passively enjoying the fruits of the fraud.  In comparison,

the material contribution the Defendants made to Hamas over a period of years is a far more

significant contribution than the Defendant in **Weiner v Moyal,** who only ratified the tort or at

best only provided minor assistance to its commission.[24]

## VI.   Under Mantin v PLO, Defendants May Be Held Personally and Primarily Liable as Negligent for Supporting Terrorist Attacks.

51.      The above discussion examines the Defendants' liability for the terrorist attack

as a secondary partner (Article 12) for the torts of Battery, Assault, and Negligence that were

---

[23] CivA 3024/10 (20.6.2011).

[24] This conclusion is also supported by a recent decision of a District Court that found the PLO liable, under Article 12, for the victims of suicide bombing.  *See* Civil File 4333-02 (Jerusalem) **Shemesh v. PLO** (2.11.2020).

committed by Hamas.  Under Israeli law, the Defendants could also be held liable, not only as

partners of Hamas under Article 12, but also for being personally and directly liable under

Negligence law (Articles 35-36) for providing training, know-how, and other forms of support to

terrorists.  In other words, under **Mantin**, the mere fact of establishing an infrastructure for

assisting and encouraging terrorist acts is in itself a negligent act, for which the Defendants can

be held personally and directly liable.

52.     In the 2017 case **Mantin Estate v PLO**, the Israeli Supreme Court recognized an

additional avenue, other than "partnership" under Article 12, for finding liability for those who

support terrorist attacks.[25] In **Mantin**, an Israeli communication technician, while performing

his work, was murdered by a terrorist's gun shot, 10 days after the terrorist completed "body

and weapons" training in a training camp initiated and operated by the PLO.  The Court found

the PLO liable in Negligence for breaching its duty of care toward the victim, on the ground that

the murder was the outcome of incitement by the PLO against Israel, 50 days of arms training

and other terror supporting activities which together established all the three elements of

negligence (harm caused by unreasonable conduct that breaches a duty of care).

53.     Under the tort of negligence, the plaintiff must establish that there is an actual

and a legal causal link between the incitement/training and the attack, namely that the former

was the "but-for" cause and the proximate cause of the latter (note this is not required under

Article 12).  However, as **Mantin** held, the Plaintiff had established that the PLO trained the

---

[25] CivA 2144/13 **Estate of Mantin v. PLO** (6.12.2017).

attacker to kill Jewish civilians, the burden of persuasion then shifted to the PLO to establish

the lack of causation, and the PLO did not meet their burden.

54.     Applying the ruling in **Mantin** to this case, the similarity would be equally as

clear.  The terror supporting activity of Defendants is the same if not more significant than that

of the PLO training camps described in **Mantin**, to include the Defendants' training, financing,

weapons, and encouragement of Hamas, and clearly qualifies as unreasonable activity.  Indeed,

while the causal link between this activity and the specific attack has to be established, as in

**Mantin** the burden of persuasion would likely be shifted to Defendants to establish lack of

causation.  Because Defendants have chosen not to appear, they have not met their burden.

55.     This personal and direct liability in negligence, following **Mantin,** differs from the

liability of Hamas for the Attack in the sense that they are different torts, which means that

Hamas and the defendants are not "joint tortfeasors" but rather each is an independent

tortfeasor.  Indeed, Mantin does not mention Article 12.  Yet, according to Article 84 of the

CWO, the Defendants and Hamas, although committing different torts would be considered

liable "jointly and severely" because the damage they all caused was indivisible.  Therefore

each liable party would be liable for the whole damages.

## VII.    Vicarious Liability

56.     Another kind of liability that may well be found in these circumstances is

*vicarious* liability, namely, liability based on the notion that a principle is liable for a tort

committed by his agent to a third person regardless of whether the principal personally

committed a tort or not.

57.     Usually, vicarious liability is imposed on employers for the torts committed by their employees who act in the course of their employment.  Under Israeli law, however, vicarious liability can be  imposed on a principal, other than employers, for the act of its agent, that is not their employee. Article 14 of the CWO provides:

> Any person who employs an agent, not being his employee, to do any act or class of acts on his behalf shall be liable for anything done by such agent in the performance of, and for the manner in which such agent does such act or class of acts.

58.     Several guidelines have been developed by the courts in its application of this relationship for purposes of establishing liablility of the principal for that of the agent.[26]  A person who committed a tort (T) is considered, under Article 14, as "an agent" of the principal (D) where acting as a "surrogate" or "long arm" of D.  This is obviously the case where T's tortious act is not part of T's usual activity, for example, where T is doing D a favor. Where T's act is part of T's usual activity, and in the same time serves D's purposes, as in our case (terrorist acts serve the interests of the Defendants as well as that of Hamas (T)), the question is the degree by which T's activity is integrated into D's activity.  Where the degree of T's integration into D's activity is high, T would be considered an agent of D and the latter would be held vicariously liable for T's tort if serving the interests of both parties.

59.     The Supreme Court decisions regarding Article 14, to date, have dealt with agency relations in the context of commercial/economic activity.  Article 14 puts no such restriction on the scope of agency and neither do the policy considerations that justify this kind of vicarious liability.  In my view it is quite likely that the Supreme Court may well apply Article

---

[26] The leading cases are **Kashany v. Rasko**, ibid., and  CivA 502/78 **State of  Isral v Nissim** (1981)

14 to agency relations and the consequential vicarious liability to non-commercial/economic

agency, as in this case.  If indeed, the court finds that, the degree of "integration" of the

Defendants' in Hamas's terror policies is high, an Israeli court may well find Iran and Syria

vicariously liable under Article 14.

### VIII.    Damages: Entitlement of Indirect, Secondary, Victims

60.    In general, the *indirect* victims of a tort are not entitled to compensation under

Israeli law for their derivative loss which originates in the loss caused to the primary victims.

But Israeli law also provides for significant and commonly applied exceptions to this rule.

Under those exceptions, as described below, Naama Henkin and the children of Eitam Henkin

are entitled to compensation not just for their harms as *direct* victims (discussed above) but

also for their harm as *indirect* victims, for their derivative loss, in the sense that they suffered

indirect damage due to the death of Eitam Henkin.

61.    Pecuniary loss – the dependents:  Under Articles 78 – 80 of the CWO, a spouse

and children (and parents) of a person killed by the tortfeasor are entitled to compensation

from the liable killer for their pecuniary loss of financial support that would have been provided

to them but for the death.  Support means both financial support and/or loss of services that

have a market price.  In this case, because the Defendants are jointly and severally liable with

Hamas for the Attack, the Defendants are also liable for this pecuniary losses suffered by the

Henkin children as a result of Eitam Henkin's murder.[27]

---

[27] Had Naama Henkin survived the attack, she too would be entitled to these pecuniary losses.

62.    Non pecuniary loss – The **Alsucha** rule:  Under the **Alsucha** rule,[28] close family

relatives of the deceased, those who belong to the "inner circle" of the family, are entitled, as

secondary, indirect victims, to compensation for severe mental harm suffered by them while

witnessing the harm-causing event that killed the deceased and the deceased's suffering.  If

indeed Naama Henkin and the children suffered severe mental harm, which can be assumed in

this terrible and shocking attack, then all the other requirements for such liability to secondary

victims are clearly met.

63.    Bereavement compensation:  In a recent case (November 2, 2020) a District

Court held, for the first time in Israel, that family members (parents, spouse and children) of

victims of terrorist acts who were killed (in this case by suicidal bombing), are in principle

entitled to compensation (from the PLO in this case), as indirect victims, for their non-pecuniary

harm under the head of "bereavement" or "solatium", following USA law.[29]  They are so

entitled even though they do not meet **Alsucha**'s requirements of severe mental harm.  The

court stated that this bereavement compensation overlaps with punitive damages so that they

should be offset against each other.  Importantly, the court awarded bereavement

compensation for an attack that occurred in March 31, 2002, before the October 2015 Attack

against the Henkins, which means that solatium damages are available in current lawsuits for

past attacks.  Bereavement, or "solatium", damages are therefore available, according to this

decision, to Naama Henkin and the Henkin children, stemming from the death of Eitam Henkin.

---

[28] CivA 444/87 **Alsucha v. Dahan** 43(iii) P.D. 397 (1990).

[29] Civil File 4333-02 (Jerusalem) **Shemesh v. PLO**.

64.    <u>Punitive damages</u>:  Punitive damages are also available under Israeli law.  For example, in **Mantin**, the Israeli Supreme Court ruled that the PLO was liable for approximately $9 million punitive damages.  That decision thus emphasized that punitive damages are available for the immoral and outrageous act of knowingly and maliciously training people to kill others.  Similarly in **Shemesh**, the district court emphasized the American rule of punitive damages and held that, specifically in cases of terrorists attack, punitive damages should be triple the amount of the compensatory damages.[30]  Finally, a recent Israeli Supreme Court case imposed liability on the PLO for supporting a terror attack under Article 12 of the CWO and as a primary tortfeasor, and awarded victims approximately $22 million in punitive damages.[31]


I declare under penalty of perjury under the laws of the United States that the foregoing and is true and accurate to the best of my knowledge, information, and belief.


    [See attached photograph of signature]
Prof. Israel Gilead
Dated:

---

[30] Civil File 4333-02 (Jerusalem) **Shemesh v. PLO** (2.11.2020).

[31] CivA 71/18 **PLO v Ben-Shalom estate** (10/3/2021)

Attack, the [...]
a result of Eitam Henkin's murder.

62. <u>Non pecuniary loss – The **Alsucha** rule:</u> Under the **Alsucha** rule, close family relatives of the deceased, those who belong to the "inner circle" of the family, are entitled, as secondary, indirect victims, to compensation for severe mental harm suffered by them while witnessing the harm-causing event that killed the deceased and the deceased's suffering. If indeed Naama Henkin and the children suffered severe mental harm, which can be assumed in this terrible and shocking attack, then all the other requirements for such liability to secondary victims are clearly met.

63. <u>Bereavement compensation</u>: In a recent case (November 2, 2020) a District Court held, for the first time in Israel, that family members (parents, spouse and children) of victims of terrorist acts who were killed (in this case by suicidal bombing), are in principle entitled to compensation (from the PLO in this case), as indirect victims, for their non-pecuniary harm under the head of "bereavement" or "solatium", following USA law. They are so entitled even though they do not meet **Alsucha**'s requirements of severe mental harm. The court stated that this bereavement compensation overlaps with punitive damages so that they should be offset against each other. Importantly, the court awarded bereavement compensation for an attack that occurred in March 31, 2002, before the October 2015 Attack against the Henkins, which means that solatium damages are available in current lawsuits for past attacks. Bereavement, or "solatium", damages are therefore available, according to this decision, to Naama Henkin and the Henkin children, stemming from the death of Eitam Henkin.

64. <u>Punitive damages</u>: Punitive damages are also available under Israeli law. For example, in **Mantin**, the Israeli Supreme Court ruled that the PLO was liable for approximately [...] million punitive damages. That decision thus emphasized that punitive damages are available [...] the immoral and outrageous act of knowingly and maliciously training people to kill others. [Sim]ilarly in **Shemesh**, the district court emphasized the American rule of punitive damages and [...] that, specifically in cases of terrorists attack, punitive damages should be triple the amount [of] the compensatory damages. Finally, a recent Israeli Supreme Court case imposed liability on [the] PLO for supporting a terror attack under Article 12 of the CWO and as a primary tortfeasor, [...] awarded victims approximately $22 million in punitive damages.

I declare under penalty of perjury under the laws of the United States that the foregoing [is] true and accurate to the best of my knowledge, information, and belief.

_____
Prof. Israel Gilead

3/15/2021   :Dated

# Exhibit A

**Professor Israel Gilead – CV 2020**

**Education**

**LL.B – 1978**

**LL.D – 1984**

**B.A** (economics) **- 1984**

**Fields of research and teaching**

Tort Law, corporations, limitation of civil actions, economic analysis of tort law, bills and notes

**Academic degrees**

Faculty of Law, Hebrew University

- Professor Emeritus          2012
- Full Professor               2002
- Bora Laskin Chair in Law    1998
- Associate Professor          1996
- Senior Lecturer              1992
- Lecturer                     1984

Other

- Full Professor , Academic Center of La and Science, head of advanced legal studies,  2012 -
- Senior Lecturer (with tenure), Faculty of Law, Haifa U.    1991 - 1992

**Academic positions**

- Member of the Israel's Council of Higher Education, head of the committee in charge of social sciences, law and business administration  2016 –

- Dean, Faculty of Law, Hebrew University          1999-2002
- Vice Dean, Faculty of Law, Hebrew University       1993-1996
- Member of the (Tenure) Appointment Committee –

Humanities and Social Sciences, Hebrew University    2006 – 2008
- Head of the Israeli Universities Admission Committee  2004 – 2007
- Head of executive Committee, National Institute

For Testing and Evaluation (psychometric tests)      2007 – 2013
- Chairperson and member of various subcommittees

   of the Council of Higher Education       2002 –
- Member and Head of various academic disciplinary bodies        1985 -


**Law reform committees and related activities**

- Drafting the 2005  Law regulating the tort immunity of public officials
- Drafting the chapters on Tort Law and Tort Remedies in the proposed 2011 draft of the Israeli Civil Code
- Drafting the new Limitation of Civil Actions Law which is part of the proposed Civil Code
- Member of the Codification Committee on Israeli Private

   Law - headed by Chief Justice Barak.              1996 - 2005
- Member of the Law Reform Committee on the Israeli Law
- of Torts - headed by Chief Justice Barak.            1994-2005
- Member and principal researcher of the Law Reform Committee on the

   of Limitation of Actions - headed by Chief Justice Barak   1992-1995


**International affiliations**

   - Member of the European Group on Tort Law (EGTL)

    Co-leading two projects of the Group on Proportional Liability

And Prescription                                  1999 - present

- Member of the European Center of Tort

and Insurance Law (ECTIL)                    1999 – present

- Member of the American Law Institute        2004 - present

**Statutory and Public Commissions**

-Member of a Public Committee established by the Ministry of Justice to recommend ways of coping with the "Wrongful Life" dilemma                    2011-2012

-Member of a statutory commission appointed by Israeli Government to appoint   Directors to the nationalized pension funds                    2003 - 2008

- Member of a statutory commission established to propose criteria

for assisting victims of a building collapse disaster                    2002

**Parliamentary Committees**

- Participating as an expert in meetings, on various issues, of the parliamentary Constitution, Law  & Justice committee and the Education Committee
2001 - present

**Boards of Directors**

- Director at Harel Insurance  and Finance group      2012 – present

   Head of the Audit, Risk Management and Remuneration Committees.

- Director  at Bank Leumi – head of its Audit Committee and Procedure Committee and member of various committees      2005 - 2011

- Member of other boards of directors and of investment committees of

   financial bodies                    1987 - 2005

<u>Books</u>

1. **Tort Law: Limits of Liability"** (Sacher Institute  - the Hebrew University (2012) (1,500 p.) (Hebrew, 2 Volumes) .

2. **Tort Law: Israel** in  The International Encyclopedia of Laws, Kluwer Law International, 2003) 300 pages ( 2003).

<u>Edited Books</u>

3. **The Law of Prescription; Analytical and Comparative Perspectives** (Intersentia, ( 2020)

4. **Proportional Liability** (I. Gilead, M. Green, B. Koach eds., De Gruyter, 2013)

5. **Classification of Private Law: Bases of Liability and Remedies** (C. Fassberg, I. Gilead eds., Sacher Institute, The Hebrew University, 2003).

6. **Developments in Austrian and Israeli Private Law** (H. Hausmaninger, H. Kozoil, A.M. Rabello, I. Gilead – eds., Springer, 1999

7.

<u>Articles in Edited Journals</u>

8. <u>"</u>Simplifying Complexities if Negligence Law – A Joint Academic/Judicial Proposal" 10 *Journal of European Tort Law* 207 - 256 (2019).

9. "Positive Externalities and the Economics of Proximate Cause"  **Washington Lee Law Review** 1517 (2017).

10. "Models of Negligence – The Debate in Israel's Supreme Court" 8 **Journal of European Tort Law**  317 (2017) .

11. "Cause of Action in limitation of Civil Actions:  9 **Sha'arey Mishpat**  9 (2016) (Hebrew).

12. Review article on the Research Handbook on the Economics of Torts,  6 **Journal of European Tort Law**  317 (2015).

13. "On Models of Negligence: Part B"   7 **Mishpatin on Line**  (2014) (Hebrew)

14. "On Models of Negligence" 7 **Mishpatin on Line** 1 (2014) (Hebrew)

15. "On the Proper Scope of Legal Causation in Negligence Law" 29 **Bar-Ilan Law Studies** 169 (2013) (Hebrew).

16. "Human Rights in Tort Law and in Contract law  - the Quiet Revolution" (with D. Barak-Erez) 8 **Kiryat Mishpat** (2009) (Hebrew).

17. "Tort Law in Chief Justice Barak judgments" in Barak's Book (**Mishpatim**) 487 (2009) (Hebrew).

18. "Rejoinder: The New Law of Limitation of Civil Actions" 36 **Mishpatin** (2007) 855 (Hebrew).

19.  "Comments on the Tort Provisions in the Proposed new Civil Code" 36 **Mishpatim** 761 (2007) (Hebrew).

20. "The 'Lost Years' – Compensating Dependants – a Note on the

    *Atinger* decision" 4 **Alei Mishpat** 47 (2005) (Hebrew).

21. "Expanding Tort Liability through Causation -  A Critical Analysis" 34 **Mishpatim** 385 (2004) (Hebrew).

22. Non-Consensual Liability of a Contractual  Party: Contract,  Negligence, Both or In-Between?" 3 **Theoretical Inquiries in Law** 511(2002).

23. "Judging the Judges?" 3 **Alei Mishpat** 255 (2002) (Hebrew).

24.  "The Evidential Loss Doctrine: Has the Burden of Proof been Rebutted"? 30 **Mishpatim** 317 (2000) (Hebrew).

25. . "Signature on a Bill - Authorization" 29 **Mishpatim** 263 (1998) (Hebrew).

26. "Tort Law and Internalization: The Gap Between Private Loss and Social Cost" 17 **Int. Rev. Law & Econ**. 589 (1997).

27. "On Presumptive Liability, Rationality and Intuition in Determining the Scope of Liability for Negligence", 26 **Mishpatim** 295 (1995) (Hebrew).

28. "Tort Liability of Public Authorities and Public Officials" (Part II), 3 **Mishpat Umimshal** 55 (1995) (Hebrew).

29. "The Evolution of Israeli Tort Law from its Common Law Origins", **European Legal Tradition and Israel** 523 (A.M. Rabello ed., Jerusalem, 1994).

30. "Tort Liability of Public Authorities and Public Officials" (Part I), 2 **Mishpat Umimshal** 339 (1994) (Hebrew).

31. "On the Deduction of Income Tax from the Award of Lost Earnings to Road Accident Victims" 24 **Mishpatim** 593 (1994) (Hebrew).

32. "On the Conformity of Liability and Insurance Aspects of Road Accidents Victims Compensation Arrangement" 23 **Mishpatim** 389 (1994) (Hebrew).

33. "On the Limits of Efficient Deterrence in Tort Law" 22 **Mishpatim** 421(1993) (Hebrew).

34. "Myocardial Infarction as a Work Accident" 40 **Hapraklit** 241 (1992) (with A. Sever) (Hebrew).

35. "You Shall Honor the Aged" 22 **Mishpatim** 233 (1992) (Hebrew).

36. "Issues in the Law of Torts" 24 **Israel L.R.** 651 (1990).

37. "Strict Product Liability, Defective Products (Liability) Law 1980", 8 **Bar-Ilan Law Stud.** 179 (1990) (Hebrew).

38. "The Law of Limitations:  A Proposal for Statutory Reform in Israel Tort Law", (Part II) 19 **Mishpatim** 369 (1990) (Hebrew).

39. "The Law of Limitations:  A Proposal for Statutory Reform in Israel Tort Law", (Part I) 19 **Mishpatim** 81 (1989) (Hebrew).

40. "On the Elements of Negligence in Israel's Law of Tort", 14 **Tel Aviv U.L.R.** 319 (1989) (Hebrew).

41. "Limitation of Actions and Prescription:  Guidelines for Reform in Israel Land Law" 18 **Mishpatim** 177 (1988) (Hebrew).

42. "On the Interrelation Between the Factual and the Normative Aspects of Negligence" 15 **Mishpatim** 446 (1986) (Hebrew)

43. "Limitation of Actions and Latent Diseases", 14 **Mishpatim** (1985) (Hebrew).

44. "Coase Theorem, Competitive Market and Product Liability Law" 20 **Israel L.R.** 39 (1985).

45. "B. Ackerman, Reconstructing American Law", 20 **Israel L.R.** 581 (1985) (book review).

46. "Rethinking Causation in Israel Tort Law" 14 **Mishpatim** 15 (1984) (Hebrew).

47. "On Linkage and Revaluation"15 **Israel L.R.** 79 (1980).

48. "The Meaning of the Expression' Accused' in sec. 2(2) of the Law of Extradition" 8 **Mishpatim** 302 (1977) (Hebrew).

<u>Articles in Edited Books</u>

49. "Directors' and Officers' liability in Israel"  in **Directors and Officers' Liability** (DE GRUYTER 2018) 207-248.

50.  "Liability of Public Authorities in Israel" in **The Liability of Public Authorities in a Comparative Perspective** (K. Oliphant ed., 2016) 225.

51. "Product Liability in Israel" in **European Product Liability (**P. <u>Machnikowski</u> ed. 2016)

52. "On the different meanings of foreseeability in negligence law" in festschrift for Advocate General Prof. Dr. Jaap Spier (2016).

53. "Three Models of Negligence" in Festschrift for Prof. Johann Neethling (2015)

54. "Proportional Liability – general report" in **Proportional Liability** (I. Gilead, M. Green, B. Koach eds.,  1 – 67  (De Gruyter,2013).

55. "Israeli Report on Proportional liability" in **Proportional Liability** (I. Gilead, M. Green, B. Koach eds.,  183 – 198  (De Gruyter,2013).

56. " Introduction to Economic Analysis of Loss Division**"** in **Aggregation and Divisibility of Damage**" 449 (K. Oliphant ed., Springer, 2009).

57. " Aggregation and divisibility of damage in Israeli Tort Law" in **Aggregation and Divisibility of Damage**" 255  (K. Oliphant ed., Springer, 2009).

58. " Economic Analysis of Prescription in Tort Law" in  ***Tort and Insurance Law Yearbook: European Tort Law 2007*** (H, Koziol and B. Steininger eds,  Springer, 2008).

59. "Limitation of Civil Actions" in **The Draft Civil Code for Israel in Comparative Perspective** (Kurt Siehr & Reinhard Zimmerman eds.) 192  (2008).

60. ""Harm Screening Under Negligence Law" in **Emerging Issues in Tort Law** (J. Neyers, E. Chamberlain & S.G.A. Pitel eds., Hart Publishing) 251 (2007).

61. Daphne Barak-Erez and Israel Gilead "Human Rights in Private Law: The Israeli Case" in **Human Rights and the Private Sphere – A Comparative Study** 252 (Routledge-Cavendish, Dawn Oliver and Jorg Fedtke eds., 2007).

62. "On the Justifications of Strict Liability" *in*  **European Tort Law 2004**  28 ( Helmut  *K*oziol & Barbara .C. Steininger eds., 2005).

63. "Israeli Report on Fault" in **Unification of Tort Law: Fault**  129 (P. Widmer, ed., Kluwer, 2005).

64. " Israeli Report on Multiple Tortfeasors"  in **Unification of Tort Law: Multiple Tortfeasors** <u>103 (H. Rogers, ed.,</u> Kluwer, 2004).

65.  "Israeli Report on Contributory Negligence" in **Unification of Tort Law: Contributory Negligence** 139 (U. Magnus, M. Martin-Casalas, eds., Kluwer, 2003).

66. "Israeli Report on Liability for Damage Caused by Others" in **Unification of Tort Law: Vicarious Liability** 139 (J. Spier, ed, Kluwer, 2003).

67. "Liability and Insurance in Cases of Damage caused by Terrorist Attacks – Economic Analysis" 238 (B,A, Koch, ed., Springer, 2003).

68. "Tort Liability of Public Authorities and Public Servants in Israeli Tort Law" – in **Tort Liability of Public Authorities in Comparative Perspective**  499 (D. Fairgrieve, M. Andenas, J. Bell eds., - British Institute of International and Comparative Law, 2002).

69. "Israeli Report on Strict Liability" in **Unification of Tort Law: Strict Liability** 183 (B.A. Koch and H. Koziol eds., Kluwer, 2002).

70. "Non-Pecuniary Loss – The Israeli Report" in **Damages for Non-Pecuniary Loss in a Comparative Perspective** 297 (W.V. H. Rogers ed.,  Springer, 2001).

71. "Causation, Risk and 'Evidential Loss'" in **Development in Austrian and Israeli Private Law** 187 (H. Hausmaninger, H. Kozoil, A.M. Rabello, I.  Gilead – eds.,  Springer , 1999).

72. "Economic Loss", **Israel Reports to the XV International Congress of Comparative Law**  79 ( M.A. Rabello ed., Sacher Institute, Hebrew University,   1999).

73. National Report on the Israeli Law of Limitation of Civil Actions Submitted to the 14th Congress of the International Academy of Comparative Law, Athens Greece, 1994.  Published in **Extinctive Prescription** 207 (E.H. Hondius, ed., Kluwer,  1995).  Also published in a compilation of Israeli Reports to the 14th Congress by Sacher Institute, 75-105.

<u>Other Publications</u>

"The Law of Torts"  -  An entry in the New Hebrew Encyclopedia (forthcoming 2021)

"Defamation Law" -  -An entry in the New Hebrew Encyclopedia (forthcoming 2021)

Contributions to various Festschrifts and articles in Israeli newspapers

<u>Doctoral Dissertation</u>

Economic Analysis of Tort Law and the Defective Product Liability Law 1980. Approved 1984.

\